# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 21-3895

———————————————

United States of America,

*Plaintiff - Appellee,*

v.

Matthew McCoy,

*Defendant - Appellant.*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Central

——————————

Submitted: September 19, 2023
Filed: July 15, 2024

——————————

Before SMITH,[1] Chief Judge, LOKEN, COLLOTON,[2] GRUENDER, BENTON, SHEPHERD, KELLY, ERICKSON, GRASZ, STRAS, and KOBES, Circuit Judges, En Banc.

——————————

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

COLLOTON, Circuit Judge.

Matthew McCoy appeals his convictions for two counts of sexual exploitation of a minor. We conclude that there was sufficient evidence to support the jury's verdicts and no reversible error at trial. We therefore affirm the judgment of the district court.[3]

I.

In 2018, McCoy's wife found a flash drive that contained two videos of a minor female that revealed her pubic area and genitals. The minor was a fifteen-year-old relative of McCoy's who often visited the McCoy residence.

During one visit on October 15, 2017, the minor wanted to take a shower. She started to prepare for a shower in the guest bathroom, but the bathtub was filled with baby toys. She asked McCoy what she should do about the toys, and McCoy told her to use the shower in the master bathroom.

The minor followed McCoy's instructions and showered in the master bathroom. Unbeknownst to the teenager, McCoy had placed a hidden camera in a closet attached to the bathroom. McCoy positioned the camera low to the ground and aimed it toward the area between the toilet and shower. The camera recorded the minor in the nude before and after she showered.

In the first video, the minor is shown preparing for a shower. The recording begins with a side profile of the teen seated on the toilet, with only her legs, arms, and head visible. Then she stands up and reveals her entire nude body. The minor

_____

[3]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

-2-

examines herself in an off-screen mirror while posing in different positions. She jumps up and down several times, causing her breasts to bounce in view of the camera. The minor then caresses her breasts in a circular motion while watching herself in the mirror. She twice faces toward the hidden camera, revealing her pubic area.

The second video shows the minor exiting the shower and drying off with a towel. At first, she is shown behind a glass shower door. She then moves into the open area where the camera captures her nude body. At that point, the minor is facing away from the camera and bending over forward at the waist, revealing a straight-on view of her genitals from behind.

Based on the production of the two videos, a grand jury charged McCoy with two counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a). The indictment charged that McCoy employed, used, persuaded, induced, enticed, and coerced the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The sexually explicit conduct alleged was the lascivious exhibition of the genitals and pubic area.

The case proceeded to trial. During a conference on jury instructions, the court presented proposed instructions on the elements of the offense (Instruction No. 11) and the meaning of "lascivious exhibition" (Instruction No. 12). Both instructions were drawn from this court's precedents interpreting 18 U.S.C. §§ 2251(a) and 2256(2); both mirrored the Eighth Circuit Model Jury Instructions. McCoy stated that he had no objection to the instructions, and the court used them when charging the jury.

McCoy moved for judgment of acquittal at the close of the government's case and at the close of all the evidence. *See* Fed. R. Crim. P. 29(a). The district court denied the motions and submitted the case to the jury. The court observed that

McCoy was the "master of these cameras," and that the minor was "confident" that McCoy had steered her to use the master bathroom. The court noted that not every video of a child in a bathroom would portray lascivious conduct, but explained that "here we have a teenager, a young woman, a teenage girl, and the videos speak for themselves on the kinds of things she was doing in the bathroom that teenagers do." The jury convicted McCoy on both counts. The court imposed sentence, and McCoy appeals the convictions.

II.

A.

McCoy argues on appeal that the district court abused its discretion when instructing the jury. McCoy stated during the trial, however, that he had no objection to the jury instructions, so we review only for plain error. Fed. R. Crim. P. 52(b); *United States v. Gaona-Lopez*, 408 F.3d 500, 506 (8th Cir. 2005).

McCoy disputes Instruction No. 12 regarding lascivious exhibition of the genitals or pubic area. The court gave the following instruction:

> To decide whether a visual depiction of the genitals or pubic area constitutes a lascivious exhibition, you must consider the overall content of the material. You may consider factors like (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive—that is, in a place or pose generally associated with sexual activity; (3) whether the minor is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the minor is fully or partially clothed, or nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the picture is intended or designed to elicit a sexual response in the viewer; (7) whether the

picture portrays the minor as a sexual object; and (8) any captions on the pictures.

You decide what weight, if any, to give to each of these factors. A picture need not involve all of these factors to constitute a lascivious exhibition of the genitals or pubic area.

McCoy argues that the district court erred by giving this instruction and should instead have used an instruction derived from a divided panel decision in another circuit that was filed after the trial in this case. *See United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022).

The district court's instruction was not plainly erroneous. To the contrary, the instruction was drawn directly from this court's decisions. The factors listed in the instruction build on six criteria identified by the court in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). The *Dost* factors and two others discussed in *United States v. Arvin*, 900 F.2d 1385, 1390-92, 1390 n.4 (9th Cir. 1990), have been incorporated into the Eighth Circuit Model Criminal Jury Instruction. This court has approved the use of the eight non-exhaustive criteria and remarked that they "impose useful discipline on the jury's deliberations." *United States v. Ward*, 686 F.3d 879, 882 (8th Cir. 2012) (quoting *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008)); *see United States v. Lohse*, 797 F.3d 515, 520 (8th Cir. 2015); *United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011); *United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999). The district court did not plainly err by instructing the jury in accordance with settled circuit precedent.[4]

---

[4]The dissenters disregard McCoy's forfeiture and argue that a jury should be instructed to apply the term "lascivious" standing alone, because "'[l]ascivious' is no different in its meaning than 'lewd,' a commonsensical term." *Post*, at 23 (quoting *United States v. Koelling*, 992 F.2d 817, 821 (8th Cir. 1993)). *Koelling*, however,

McCoy also challenges the district court's definition of the term "used" in Instruction No. 11. The court stated that "[a] person is 'used' if they are photographed or videotaped." McCoy complains that the court should not have defined "used" without also defining other statutory terms. He further asserts that the instruction on "used" was an incomplete statement of the law because it did not refer to the minor engaging in sexually explicit conduct.

There was no plain error on this issue. The challenged instruction was virtually identical to an instruction in *Lohse* that this court held not plainly erroneous. 797 F.3d at 519, 521. The instruction in this case further explained that to proceed on a theory of "use," the government was required to prove not merely that McCoy "used" the minor, but that he "used" the minor "to engage in sexually explicit conduct." This instruction, too, is consistent with circuit precedent. *See United States v. Vanhorn*, 740 F.3d 1166, 1168 (8th Cir. 2014); *United States v. McCloud*, 590 F.3d 560, 566 (8th Cir. 2009); *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007). McCoy did not object to the instruction or explain why the court should also have instructed on the meaning of "employed," "persuaded," "induced," "enticed," and "coerced"—terms that the court reasonably could have deemed self-explanatory. The court further instructed that it was the jury's job "to decide what happened," that the jurors alone were "the judges of the facts," and that the jury should not take any

quoted *Wiegand*, the decision that affirmed the conviction in *Dost*. *See* 812 F.2d at 1243. Applying the "commonsensical term" of "lascivious," *Wiegand* criticized the *Dost* factors as "over-generous to the defendant," and concluded that "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles." *Id*. at 1244. *Wiegand* held that the statute is violated by production of "a picture of a child's sex organs displayed lasciviously—that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *Id*. Because McCoy forfeited any challenge to settled circuit law, and the government also agreed with the jury instructions, we need not address whether the instructions were over-generous to the defendant.

statement by the judge to suggest what decision the jury should make.  There was no plain error under settled law.  *See United States v. Hensley*, 982 F.3d 1147, 1161 (8th Cir. 2020).

## B.

## 1.

McCoy next challenges the sufficiency of the evidence to support the convictions under 18 U.S.C. § 2251(a).  In so doing, he reiterates his argument that the court should apply a legal standard under §§ 2251(a) and 2256(2) that is taken from the decision of another circuit in *Hillie*.  The suggested standard differs from our settled circuit precedent and from the jury instructions to which McCoy made no objection.  McCoy's contention fails under the plain-error rule.

Although McCoy preserved a challenge to the sufficiency of the evidence under existing circuit law, he did not preserve a challenge to the meaning of the statute.  The essence of McCoy's argument on appeal "'is that there was insufficient evidence to convict him under [a] jury instruction that the court should have given,' despite his acquiescence to the instruction the court actually gave." *United States v. McRae*, 702 F.3d 806, 835 (5th Cir. 2012) (quoting *United States v. Fontenot*, 611 F.3d 734, 737 (11th Cir. 2010)).  In that situation, we review his sufficiency challenge for plain error only.  *Id*. at 835; *Fontenot*, 611 F.3d at 737; *United States v. Walker*, 596 F. App'x 302, 310-11 (5th Cir. 2015); *United States v. Joseph*, 567 F. App'x 844, 847-48 (11th Cir. 2014).  McCoy conceded this point at oral argument and acknowledged that plain-error review applies.

A defendant may not recharacterize a challenge to a jury instruction as a sufficiency-of-the-evidence claim to avoid his forfeiture.  "If a defendant could obtain de novo review of what *should have been* charged by challenging evidentiary

sufficiency, he could work an end-run around forfeiture of a challenge to jury instructions." *McRae*, 702 F.3d at 835 n.14. In other words, "'[a] defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law.' Otherwise, a defendant could repackage a claim of jury instruction error as a sufficiency-of-the-evidence challenge to reach a result of acquittal." *United States v. Benton*, 98 F.4th 1119, 1132 (D.C. Cir. 2024) (citation omitted) (quoting *United States v. Reynoso*, 38 F.4th 1083, 1091 (D.C. Cir. 2022)).

For the reasons discussed in connection with the jury instructions, the district court did not plainly err by applying a legal standard under §§ 2251(a) and 2256(2) that is consistent with settled circuit precedent. We therefore reject McCoy's argument for a judgment of acquittal based on a new legal standard that he did not raise in the district court.

2.

McCoy also argues that there was insufficient evidence to sustain the convictions under settled law as reflected in the jury instructions used at trial. To prevail on that claim, he must establish that no rational jury could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Ball*, 22 F.3d 197, 198 (8th Cir. 1994); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Our standard of review is "exceedingly deferential." *Ward*, 686 F.3d at 882.

McCoy argues that there was insufficient evidence that the minor female engaged in a lascivious exhibition of the genitals or pubic area. There was undoubtedly sufficient evidence to establish that McCoy recorded the minor female as she unwittingly exhibited her genitals and pubic area to the hidden camera. He contends, however, that the two videos depict "mere nudity," and that no rational jury could find that the exhibition of her genitals or pubic area was lascivious.

The statute requires proof that the defendant produced a visual depiction of a minor engaged in sexually explicit conduct—in this case, a lascivious exhibition of the genitals or pubic area. Our cases have explained that "mere nudity" does not qualify, and that a "lascivious" exhibition must be sexual in nature. *United States v. Kemmerling*, 285 F.3d 644, 645-46 (8th Cir. 2002). In deciding whether a rational jury could find a lascivious exhibition, we have approved and found useful the eight non-exhaustive criteria set forth in the district court's jury instruction in this case. Not all of the factors need be present to support a violation of the statute: "the inquiry is always case specific, and even if a majority of the *Dost* factors are absent, an image may still qualify as a lascivious exhibition of genitals." *Lohse*, 797 F.3d at 521.

Our decisions have said that the issue is not whether the images were intended to appeal to the defendant's sexual interests, but whether they appear to be of a sexual character on their face. *Kemmerling*, 285 F.3d at 646. At the same time, we have reiterated that a relevant factor is whether the images were "intended to elicit a sexual response in the viewer," *United States v. Paris*, 816 F.3d 1037, 1039 (8th Cir. 2016), or whether "their purpose appears to be to elicit a sexual response from the viewer." *Kemmerling*, 285 F.3d at 646. "[E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual." *Johnson*, 639 F.3d at 440; *see Ward*, 686 F.3d at 883. A minor need not subjectively intend to elicit a sexual response or express sexual desire: "The 'lascivious exhibition' is not the work of the child, whose innocence is not in question, but of the producer or editor of the video." *Horn*, 187 F.3d at 790. Whether the materials depict a lascivious exhibition is a question of fact for the jury. *United States v. Petroske*, 928 F.3d 767, 773 (8th Cir. 2019).[5]

---

[5]Judge Grasz's dissent, *post*, at 24, asserts implausibly that our straightforward recitation of circuit precedent is a "marked departure . . . from our circuit precedent." Elsewhere, the dissent itself recognizes that whether a depiction was "intended or designed to elicit a sexual response in the viewer" is a relevant factor in determining

In McCoy's case, there was sufficient evidence to support the jury's finding of guilt on Count I. A rational jury could have found that McCoy persuaded, induced, or enticed the minor female to engage in sexually explicit conduct when he steered her to the bathroom with the hidden camera, knowing that she was likely to disrobe, shower, and exhibit her pubic area to the camera.

The jury reasonably found that the minor female engaged in a lascivious exhibition of the pubic area. The minor was depicted in the nude with her pubic area displayed. The camera was positioned in a way to record images of the minor's pubic area. The video was edited to contain only nude depictions of the minor. McCoy arranged a setting, outside a shower, that is sexually suggestive: "showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film." *United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) (quoting *United States v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010)).

A reasonable jury could find that the minor's actions in the video carry a sexual connotation. In addition to revealing her pubic area, she jumped up and down, causing her breasts to bounce and jiggle, and caressed her breasts while posing for a

lasciviousness under the factors that have been approved by our precedent. *Post*, at 22; *see Petroske*, 928 F.3d at 772-73 (holding no error where instruction on meaning of "lascivious" directed jury to "consider whether Petroske, as the producer or editor of the videos, intended for the depictions to be sexual"); *Paris*, 816 F.3d at 1039; *Lohse*, 797 F.3d at 520; *Ward*, 686 F.3d at 884 (holding that jury properly considered "whether the images were intended to elicit a sexual response in the viewer"); *Johnson*, 639 F.3d at 440 ("In determining whether images are 'lascivious,' we have referred to" factors that include "whether the image is intended to elicit a sexual response in the viewer."); *Wallenfang*, 568 F.3d at 657; *Horn*, 187 F.3d at 789-90; *cf. United States v. Miller*, 829 F.3d 519, 525-26 (7th Cir. 2016) ("*Of course* there is an element of intent embodied in an evaluation of whether an image is lascivious," or else "the statute would criminalize . . . a doctor taking a picture of a minor patient's pubic area for a medical diagnosis.").

mirror. As the district court put it in explaining why a reasonable jury could find that the exhibition was sexual in nature, "the videos speak for themselves on the kinds of things she was doing in the bathroom that teenagers do." Of course, the statute does not criminalize inducing a minor to engage in a lascivious exhibition of the female breast. But this case involves an exhibition of the pubic area, and context is relevant in determining whether an exhibition of the pubic area was lascivious.

The jury reasonably could find that the secret recording of this activity outside the shower portrayed the minor female as a sexual object, and that the purpose or design of the video was to elicit a sexual response in the viewer. When the minor exhibited her pubic area in the context of this video, a rational jury could find that the exhibition was sexual in nature, sexually suggestive, and lascivious.

There was likewise sufficient evidence to support the jury's finding of guilt on Count II. The jury reasonably could find that the minor female's exhibition of her genitals occurred in a sexually suggestive setting as she exited a shower while wet and nude. In this video, McCoy recorded a straight-on view of the teenager's genitals from behind as she bent over forward. A reasonable jury could find that this posture and image were highly suggestive of sexual activity, regardless of whether the minor acted with sexual activity in mind. A reasonable jury could find that McCoy's surreptitious production portrayed the nude female as a sexual object, and that the purpose or design of the video was to elicit a sexual response in the viewer. A rational jury could conclude that the exhibition of genitals was sexual in nature, sexually suggestive, and lascivious.[6]

---

[6]Judge Stras's dissent ignores McCoy's forfeiture and urges a new legal standard that includes a focus on the sexual intent of the minor victim. *Post*, at 24 n.15. But under the judicial opinion cited by that dissent, an exhibition is lascivious where, as here, it is "sexual in nature" or "sexually suggestive," "regardless of whether the child subjectively intends to express sexual desire." *United States v. Hillie*, 38 F.4th 235, 237, 241 (D.C. Cir. 2022) (Katsas, J., concurring in the denial

In *Ward*, perhaps our most similar precedent, we upheld a jury's finding that a defendant's video recording of a minor undressing in the hallway of a recreational vehicle depicted a lascivious exhibition of the genitals or pubic area. Although the video did not show overt sexual activity and could have appeared "like a series of sexually unfocused pictures of a nude youngster," 686 F.3d at 883, we held that the jury reasonably rejected the defendant's "mere nudity" defense. The defendant in that case used verbal commands and touches to position the minor so that her pubic area faced the secret camera. In this case, McCoy directed the minor to use a particular bathroom and shower with knowledge that his pre-positioned hidden camera would capture images of her pubic area and genitals. McCoy accomplished his objective without the need for further commands or touches, but his more efficient approach to exploitation of the minor does not take his conduct outside the statute.

A reasonable jury could have found that the videos in this case, showing the minor female bending over while wet in one video and caressing herself in the other, are more sexually suggestive than the depictions described in *Ward*. In both cases, a reasonable jury could find that the defendant viewed the minor female "as a sexual object," and that he "composed the images in order to elicit a sexual response in a viewer—himself." *Id*. at 884 (quoting *Rivera*, 546 F.3d at 250). Without expressing a view on which case involved stronger evidence on the whole, we conclude that the evidence in both cases justified submission to a jury for a finding of fact on lasciviousness. In this case, as in *Ward*, the evidence was sufficient to meet the statutory standard when viewed in the light most favorable to the verdict.[7]

of rehearing en banc). The concurring judge in *Hillie*, moreover, did not review the evidence in this case or opine that exhibitions like those induced by McCoy are insufficient to meet a "sexually suggestive" standard.

[7]Judge Grasz's dissent, *post*, at 21 n.13, suggests opaquely that the record may have supported a conviction for attempted production of child pornography. McCoy completed the charged offenses, however, when he induced the minor to engage in a lascivious exhibition of the pubic area or genitals for the purpose of producing a

C.

McCoy next argues that the district court made erroneous evidentiary rulings at trial. First, he contends that the court erred by admitting still images of the minor female that he created from the two videos. He asserts that the admission of this evidence created a constructive amendment of the indictment or a variance from the indictment.

The district court admitted the still images after concluding that the evidence was intrinsic to the crime charged. The court ruled that the still images were relevant to the question whether McCoy intentionally made the video recordings of the minor female. By tending to prove that McCoy purposely made the recordings, the evidence tended to refute McCoy's defense that he did not intend to create the videos of the minor.

There was no constructive amendment of the indictment. Before the still images were received in evidence, the court instructed the jury that the images were received as evidence of McCoy's alleged intent on the date when the videos were created. The court specifically advised the jury to remember that McCoy was "on trial only for the crimes charged in the indictment, that is, only for making the two videos charged in Count 1 and Count 2 of the indictment." The admission of evidence regarding McCoy's alleged intent in creating the videos did not constructively amend the indictment to charge McCoy with creating the still images.

Nor did the admission of the still images create an impermissible variance from the indictment. A variance arises when the evidence presented proves facts that are

video of her conduct. There may have been an "attempt" offense on different facts—if the camera had malfunctioned or if the minor had exhibited her genitals in a direction away from the hidden camera. But the dissent's rationale would preclude a conviction here for both sexual exploitation of a minor and an attempt to do so.

-13-

materially different from those alleged in the indictment. *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007). The defense had fair notice of the still images, and admission of the images did not change the fact that McCoy was prosecuted for producing the two videos described in the indictment. Evidence of the defendant's intent in producing the videos, even though derived from a source outside the videos, did not create a material variance from the indictment.

McCoy also challenges the district court's admission of other images, produced by hidden cameras, that did not constitute child pornography. The court ruled that the evidence was admissible under Federal Rule of Evidence 404(b) to show McCoy's knowledge, opportunity, and intent to commit the crimes charged, and to address whether the charged video recordings were the result of a mistake or an accident. The court gave a limiting instruction to the jury that the evidence could be considered only for these limited purposes, and that McCoy was on trial only for the crimes charged in the indictment.

We conclude that there was no abuse of discretion in admitting the evidence of other acts by McCoy. The images revealed other instances in which McCoy made surreptitious recordings in his home. They were relevant to show that he knew of the hidden cameras, intentionally made the charged video recordings, and did not record the minor by mistake or accident. The other images were similar in kind and were produced at a time that was not overly remote from the charged offenses. The court gave the jury a thorough cautionary instruction, and reasonably concluded that the probative value of the evidence was not substantially outweighed by a risk of unfair prejudice. There is no reversible error.

\*     \*     \*

The judgment of the district court is affirmed.

KELLY, Circuit Judge, with whom ERICKSON and GRASZ, Circuit Judges, join, dissenting.

Today, the en banc court has conducted the same analysis under the same law that the panel applied, including the <u>Dost</u> factors—just to reach a different result. <u>See</u> Fed. R. App. P. 35(a). I concur in Judge Grasz's dissent, because I continue to agree with the panel's original application of that legal standard to the facts of this case. I write separately to address an additional reason to doubt the usefulness of the outdated <u>Dost</u> factors, and of reapplying them here.

<u>Dost</u> was decided in 1986. <u>See</u> 636 F. Supp. 828. In that case, the defendants used a film camera to take still photographs of "totally nude" minors—one of whom they had pose in "supine and sitting poses" on "draped material, resembling a bed, with her genitals and breasts fully exposed," and another they photographed at the beach with her pubic area "completely exposed"—and then mailed the film to a processing company to develop it into photographs. <u>Id.</u> at 830, 833. In this case, surreptitiously captured videos and pictures were stored on flash drives, and cameras were hidden in a closet and a bathroom vent. <u>See</u> <u>United States v. McCoy</u>, 55 F.4th 658, 660 (8th Cir. 2022), <u>reh'g en banc granted, opinion vacated</u>, No. 21-3895, 2023 WL 2440852 (8th Cir. Mar. 10, 2023). Technology is radically different today. Yet we continue to apply <u>Dost</u>'s factors to consider images and videos created by technology that the <u>Dost</u> court could have hardly envisioned.[8] With advances in

---

[8]For example, the world's first fully self-contained portable video camera was only introduced a decade prior to the introduction of the <u>Dost</u> factors. <u>See</u> Laurence J. Thorpe, <u>The SMPTE Century: Evolution in Cameras and Lenses From 1916 to 2016</u>, SMPTE Motion Imaging J., Aug. 2016, at 1, 5. Similarly, two years after the introduction of the <u>Dost</u> factors, there were only "about sixty thousand computers connected to the Internet. Few of them were PCs. Instead, the Net was the province of mainframes, minicomputers, and professional workstations found at government offices, universities, and computer science research centers." Jonathan L. Zittrain, <u>The Future of the Internet—And How to Stop It</u> 36 (2008) (citations omitted).

technology have come new and often clandestine ways of producing the types of images that are the target of federal child pornography statutes. As is evident from this case, the Dost factors do not easily accommodate these changes.

This is not a problem that begins and ends with the Dost factors. Dost itself, at least in part, also reflects the arguably outdated language of the statute. The statute's description of a minor as "engag[ing] in" "sexually explicit conduct" through the "lascivious exhibition of [their] anus, genitals, or pubic area" comes dangerously close to suggesting that the child's conduct and intent—and thus culpability—are relevant. 18 U.S.C. §§ 2251(a), 2256(2)(A)(v); Dost, 636 F. Supp. at 832 (including "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity" as a factor to assess in determining whether the display at issue is lascivious, but also observing that "[a] child of very tender years . . . would presumably be incapable of exuding sexual coyness"). The idea that a *child* can express "a willingness to engage in sexual activity" is a highly suspect proposition as both a factual and a legal matter, as we have at least tacitly acknowledged. See Horn, 187 F.3d at 790 ("The 'lascivious exhibition' is not the work of the child, whose innocence is not in question, but of the producer or editor of the video."). But as both the court's opinion and Judge Grasz's dissent highlight, interpreting whose intent matters and how it matters in the context of this statute is a murky endeavor, and the Dost factors do not assist us in resolving it.

Regardless, under the Federal Rules of Appellate Procedure, "[a]n en banc hearing or rehearing is not favored and ordinarily will not be ordered unless . . . [it] is necessary to secure or maintain uniformity of [our] decisions; or . . . the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). Here, the en banc court declines to revisit the Dost factors as the standard for determining what qualifies as a "lascivious exhibition" for purposes of § 2256(2)(A)(v). Instead, just as numerous panels of our court have done in the past, it has chosen to apply these "neither definitive nor exhaustive" criteria, see Horn, 187 F.3d at 789, a majority of

-16-

which do not even need to be present to support a violation of the statute, see Lohse, 797 F.3d at 520–21, to the facts of this case. The majority of the en banc court has disagreed with how the panel resolved McCoy's sufficiency of the evidence argument. But I remain doubtful that this disagreement warranted en banc review.

GRASZ, Circuit Judge, with whom SMITH, Chief Judge, and KELLY, ERICKSON, and STRAS, Circuit Judges, join, dissenting.

The court's decision today ignores the plain language of 18 U.S.C. §§ 2251(a) and 2256(2)(A)(v) in order to keep an unsympathetic voyeur in prison. To achieve this result, the majority expands the scope of the statute beyond its text and into areas that now call into question the constitutionality of this important statutory protection for children. Today is the first time this court has held that images briefly capturing a glimpse of a minor's pubic area, that are not focused or zoomed in, depict "sexually explicit conduct."[9] *See United States v. Boyle*, 700 F.3d 1138, 1146 (8th Cir. 2012) (stating the statute covers images "focusing on the pubic area of the subject in a way that is lewd or lurid"). Up to now, we required positioning of the minor's pubic area

_____

[9]The plain text of 18 U.S.C. § 2251(a) encompasses only images that depict "sexually explicit conduct." Sexually explicit conduct includes certain specified sexual acts that are not present here. *Id*. § 2256(2)(A)(i)–(iv). But relevant to this case, the definition of "sexually explicit conduct" also includes a "lascivious exhibition" of a minor's "anus, genitals, or pubic area." *Id*. § 2256(2)(A)(v). The Supreme Court has suggested "lascivious" has the same meaning as "lewd." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994); *see United States v. Hillie*, 39 F.4th 674, 686–87 (D.C. Cir. 2022) (noting the Supreme Court has recognized lascivious and lewd have the same meaning). And until today, this court agreed. *United States v. Koelling*, 992 F.2d 817, 821 (8th Cir. 1993) (noting "'lascivious' is no different in its meaning than 'lewd,' a commonsensical term . . ."); *see also United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009) ("Nudity alone does not fit this description . . . . A picture is 'lascivious' only if it is sexual in nature.") (citation omitted). Neither a non-lascivious display of the listed body parts nor a lascivious display of other body parts meets the statutory definition.

-17-

toward the camera, either through physical or verbal directions, *United States v. Ward*, 686 F.3d 879, 883–84 (8th Cir. 2012); focusing of the camera on the pubic area, *United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999); *Boyle*, 700 F.3d at 1146; or zooming in the camera on the pubic area, *United States v. Johnson*, 539 F.3d 433, 440 (8th Cir. 2011).  The videos in this case depict none of these circumstances.

The first video showed the minor for thirty seconds before she showered.  And at no time in the video was she being touched, positioned, or otherwise directed so as to capture her pubic area.  During much of the thirty seconds, the video showed her profile as she looked at an offscreen mirror.  There is simply no lascivious exhibition of the pubic area in the video.  Specifically, and as the majority agrees, the video briefly captured her pubic area twice as she prepared to enter the shower, but only for a few frames of the video.  In terms previously followed by this court, this is mere nudity because there was no "focusing on the pubic area of the subject in a way that is lewd or lurid." *Boyle*, 700 F.3d at 1146.  The majority's analysis also, at least as to Count 1, rests entirely on what it graphically, and unfairly to the minor, portrays as a lascivious exhibition of her breasts before she enters the shower.[10]  While looking at herself in the mirror, she did briefly cup her breasts and jump, but she did not lasciviously display her pubic area.  The majority's approach effectively overrules longstanding precedent.  We have up to now unequivocally held (in accordance with the plain text of the statute) that, "[u]nder federal law, child pornography does not include lascivious exhibition of the female breast." *United States v. Box*, 960 F.3d 1025, 1026 (8th Cir. 2020) (per curiam); *see also United States v. Gleich*, 397 F.3d 608, 614 (8th Cir. 2005) (holding "taking pictures of a non-pubic area such as the buttocks does not meet the definition of 'sexually explicit conduct'").

---

[10]Nowhere in the government's extensive brief does it even make such an argument, and for good reason.  It is contrary to the plain text of the statute and our case law.

The same is true of the second video, which shows the minor subject drying off with a towel after exiting the shower. During most of this time, she was either mostly off-screen or partially obscured by the shower door or a bath towel. The video did capture her bending over to pick up a towel, briefly revealing her pubic area, albeit obscured in a shadow. As with the first video, the minor did not act in a sexual manner and was merely drying off. Nor was the camera zoomed in on her pubic area. Though the majority emphasizes that she was at one point bent over, she was not acting in a sexually provocative manner. This does not meet the statutory definition of a "lascivious exhibition of the anus, genitals, or pubic area . . . ." 18 U.S.C. § 2256(2)(A)(v).

The majority opinion's novel approach forces it to retreat from circuit precedent that was consistent with the words of the statute. The majority ignores the fact that the government's foundational argument was not that the images were sexual on their face. Rather, the government characterized them as "innocent" (i.e., not of a sexual nature) images that were legally lascivious because McCoy "intended" for them to be. This "what's-in-the-mind-of-the-defendant" theory of statutory construction (which allows for rampant jury speculation) is neither rejected nor criticized by the majority opinion. On the contrary, the opinion engages in a sometimes confusing and muddled discussion that provides refuge for the government's subjective-guessing standard. *See ante*, at 9 and 9–10 n.5. Our previously controlling cases were quite clear that the subjective intent of the defendant cannot make an image lascivious for purposes of the statute. *See, e.g.*, *United States v. Wallenfang*, 568 F.3d 649, 658 (8th Cir. 2009). But the majority opinion retreats from this principle.[11]

_____

[11]The majority relies on a Seventh Circuit opinion to support its view that the subjective intent of the defendant "is a relevant factor in determining lasciviousness." *Ante*, at 9–10 n.5 (citing *United States v. Miller*, 829 F.3d 519, 525–26 (7th Cir. 2016)). However, *Miller* is irreconcilable with longstanding Eighth Circuit precedent

The majority opinion also misrepresents our existing case law. The majority quotes from *Horn* and *Johnson* for the proposition that videos may depict sexually explicit conduct even though the children depicted are themselves innocent. *See ante*, at 9. This is of course true. But the image must still include "sexually explicit conduct" which in this case means a lascivious display of the anus, genitals, or pubic area. *See United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002) ("A picture is 'lascivious' only if it is sexual in nature."). The court in *Horn* said that "focusing the viewer's attention on the pubic area" and "freeze-framing" can "create an image intended to elicit a sexual response in the viewer." *Horn*, 187 F.3d at 790. Thus, the court's focus was on whether the image was of a sexual nature on its face—not whether the particular defendant subjectively thought it was. The videos at issue here include no such "focusing" or "freeze-framing" on the momentary visibility of the pubic area. And *Johnson* was an "attempt" case where the evidence showed the defendant tried to zoom in to obtain "a close-up view of [the minor's] naked pubic area." *Johnson*, 639 F.3d at 437.[12] This is a critical distinction because the subjective

_____

holding "the relevant factual inquiry . . . is not whether the pictures in issue appealed, or were intended to appeal, to [the defendant's] sexual interests but whether, on their face, they appear to be of a sexual character." *Wallenfang*, 568 F.3d at 658 (alteration in original) (quoting *United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002)). If the court chooses to overrule decades of our precedent, it should do so expressly and explain why such a change is warranted. This is particularly true because the change in direction moves the law decidedly away from the statute's text and into the vague and uncertain arena of subjective intent.

[12]Notably, the court in *Johnson* distinguished the Fifth Circuit's decision in *United States v. Steen*, 634 F.3d 822 (5th Cir. 2011), based on the fact the defendant in *Steen* was charged with the completed crime of producing child pornography. *Johnson*, 639 F.3d at 439 n.2. In *Steen*, the Fifth Circuit had held a "[s]urreptitious[] filming [of] a nude [minor]" that included visibility of the minor's pubic area for a "brief second" did not meet the standard for producing child pornography. *Steen*, 634 F.3d at 827. The *Johnson* court noted *Steen* was not applicable because Johnson's case "was submitted to the jury only on an attempt theory." *Johnson*, 639 F.3d at 439. The majority fails to recognize this important distinction by conflating attempt

intent of the defendant is relevant in attempt cases. *See id.* at 441 ("A reasonable jury could draw a reasonable inference that Johnson intended the videos to be sexual in nature and to elicit a sexual response in the viewer."). Here, unlike *Johnson*, the government never charged McCoy with the "attempted" production of child pornography.[13]

The court avoids its legal obligation to decide whether as a matter of law the videos contain images of sexually explicit conduct, *United States v. Petroske*, 928 F.3d 767, 773 (8th Cir. 2019) (reviewing de novo the meaning of lascivious exhibition for purposes of a sufficiency challenge), by suggesting this is a "question

_____

with production. *See ante*, at 9–10 n.5 (citing *United States v. Petroske*, 928 F.3d 767, 772–73 (8th Cir. 2019)). A defendant's subjective intent is only relevant in an attempt case; an objective standard is applied to images in completed production cases. The majority also muddles the distinction between the intent element (*mens rea*) for the crime under 18 U.S.C. § 2251(a) and the standard for determining whether an image contains a lascivious exhibition under 18 U.S.C. § 2256(2)(A)(v). Under 18 U.S.C. § 2251(a), the government must prove the defendant intentionally employed, used, persuaded, induced, enticed, or coerced the minor "for the purpose of producing any visual depiction of [sexually explicit] conduct." A photo taken by a parent or doctor for medical diagnosis is obviously not taken "for the purpose" of producing a visual depiction of "sexually explicit conduct" as required under the plain terms of the statute. And even if a defendant *intended* to produce such a visual depiction, a conviction for completed production—as opposed to attempted production—still requires that the defendant *produced* an image that meets the definition of sexually explicit conduct under 18 U.S.C. § 2256(2)(A)(v).

[13]This case may well have been different had the government charged McCoy with attempted production of child pornography. The elements of attempt require only that the defendant have the "intent to commit the predicate offense" and take "substantial step[s] toward its commission." *Petroske*, 928 F.3d at 773 (quoting *United States v. Young*, 613 F.3d 735, 742 (8th Cir. 2010)). But we cannot sustain a conviction based on what the government might have done, only on what it did. The jury was instructed on only a completed offense. Thus, McCoy's conviction rests solely on the contents of the two charged videos.

of fact for the jury," *ante*, at 9. But this only highlights the decidedly non-textual approach of using the *Dost* factors[14] to interpret what constitutes a "lascivious exhibition of the anus, genitals, or pubic area" for purposes of 18 U.S.C. § 2256(2)(A)(v). Because the court is sitting en banc, I would recognize the *Dost* factors are not appropriate in a jury instruction because they may steer juries away from applying the plain words of the statute adopted by Congress. For example, factor 4—whether the minor is fully or partially clothed, or nude—may confuse the jury. *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). "We have held that more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the statute." *Kemmerling*, 285 F.3d at 645–46. Likewise, factor 2—concerning the setting of the visual depiction—is difficult to square with any language of the statute. *See Dost*, 635 F. Supp. at 832. And factor 6—whether the visual depiction is intended or designed to elicit a sexual response in the viewer—also risks steering jurors away from the statutory language adopted by Congress. *See id.* As we have repeatedly held, "the relevant factual inquiry . . . is not whether the pictures in issue appealed, or were intended to appeal, to [the defendant's] sexual interests but whether, on their face, they appear to be of a sexual character." *Wallenfang*, 568 F.3d at 658 (alterations in original) (quoting *Kemmerling*, 285 F.3d at 646).

Instead of focusing on the plain meaning of "lascivious exhibition," the *Dost* factors lead jurors "deep into the weeds of evaluating degrees of nudity, or asking whether an image conveys sexual coyness, expresses a willingness to engage in sexual activity, or depicts a pose or a place associated with sexual activity." *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014). "There is every reason to avoid importing unnecessary interpretative conundrums into a statute, especially where the

---

[14]The *Dost* factors originated nearly four decades ago from a federal district court that thought the "'lascivious exhibition' determination must be made on a case-by-case basis using general principles as guides for analysis." *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).

statute employs terms that lay people are perfectly capable of understanding." *United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006). The amorphous standard applied by the majority today presents a very real danger to the continued validity of the statute under the Fifth Amendment. The term "lascivious exhibition" was upheld against constitutional vagueness challenges because it has a meaning a reasonable person could understand—it means the same thing as lewd. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994) (rejecting an unconstitutional vagueness argument "for the reasons stated by the Court of Appeals," which explained lascivious and lewd have the same meaning); *United States v. Koelling*, 992 F.2d 817, 821 (8th Cir. 1993). If the statute's language is instead construed to allow pornography convictions for non-lewd images based on a defendant's subjective intent—as perceived by a jury—then the reasoning of the cases upholding the statute under the Fifth Amendment is undermined.

This case is a perfect example of why the court should overrule our case law blessing the instruction of the jury on the *Dost* factors to determine whether a visual depiction could be construed as containing "sexually explicit conduct." When a jury needs to assess whether an image is a "lascivious exhibition" of the statutorily specified body parts, the common definitions of "lascivious" and "exhibition" provide a sufficient guide. As we long ago recognized, before drifting into the *Dost* fog, "[w]hile the words 'lascivious exhibition of the genitals or pubic area' are perhaps less explicit than the other definitions [in the statute], '[l]ascivious' is no different in its meaning than 'lewd,' a commonsensical term . . . ." *Koelling*, 992 F.2d at 821 (citations omitted).

To be clear, the well-recognized problem with the *Dost* factors is not the sole basis for my dissent. Like the unanimous panel that first considered this appeal, I do not believe the videos contain depictions of sexually explicit conduct as defined by Congress. McCoy's failure to object to the *Dost*-based jury instructions—which is emphasized by the majority—does not change this fact. The seriousness and reprehensible nature of McCoy's conduct is obvious. But that is no reason to ignore

the plain meaning of the text of the statute. Nor is it reason to remove foundational guideposts in our controlling caselaw and replace them with puzzling equivocations. *See ante*, at 9 (unqualifiedly stating that "a relevant factor is whether the images were 'intended to elicit a sexual response in the viewer'") and 9–10 n.5 (positing that the subjective intent of the defendant "is a relevant factor in determining lasciviousness"). The majority opinion is a marked departure not only from the text of the statute but also from our circuit precedent. I respectfully dissent.

STRAS, Circuit Judge, dissenting.

Judge Katsas has it right: "'lascivious exhibition' means revealing private parts in a sexually suggestive way." *United States v. Hillie*, 38 F.4th 235, 236 (D.C. Cir. 2022) (Katsas, J., concurring in the denial of rehearing en banc). There is nothing "lascivious" about someone just "us[ing] the toilet . . . or bath[ing]," *id.* at 237, which is all we have here,[15] so I concur in Judge Grasz's dissent.

———————————————

[15]The court's approach makes McCoy's liability depend on whether *somebody* could possibly see the victim's acts as sexually suggestive, even if she is acting innocently (like here) and he had no influence over what she did. *Cf. United States v. Ward*, 686 F.3d 879, 883–84 (8th Cir. 2012) (distinguishing "position[ing] [a child] using verbal commands" from "peeking . . . upon an unaware subject pursuing activities unrelated to sex" (quoting *United States v. Steen*, 634 F.3d 822, 828 (5th Cir. 2011))). Consider an example. Suppose she had brushed her teeth before getting dressed. There is nothing "sexually explicit" about that act. 18 U.S.C. § 2256(2)(A). But what if she dropped the toothpaste cap and bent over to pick it up? The court's reasoning implies that her every day, nonsexual conduct would somehow be transformed into a "lascivious exhibition," just because the pose might appear sexual to an audience she did not even know existed. *Id.* § 2256(2)(A)(v). Like Judge Grasz and Judge Katsas, rather than treat a predator's predilections as somehow sexualizing everything a victim does, I would simply recognize that someone who tries to sexually exploit a child but fails should be charged with an attempt. *See id.* § 2251(e); *United States v. Petroske*, 928 F.3d 767, 773 (8th Cir. 2019) (explaining what an attempt conviction requires); *Hillie*, 38 F.4th at 241 n.1.