# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3721
_____

United States of America

*Plaintiff - Appellee*

v.

William Dahl

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 17, 2025
Filed: July 22, 2025
_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

William Dahl was convicted of production of child pornography, 18 U.S.C. § 2251(a) and (e), and two counts of receiving child pornography, 18 U.S.C. § 2252A(a)(2) and (b)(1), at a bench trial. Dahl argues first that the evidence was insufficient to support his convictions for receipt. He also argues the district court erred by running his sentence consecutive to his sentences in six state cases. We affirm Dahl's convictions but remand for resentencing.

# I. Sufficiency of the Evidence

S met Dahl when she was 16 years old and Dahl was 36. Dahl and S talked over Facebook Messenger and Snapchat, and Dahl bought her gifts like a cell phone on his plan and alcohol and vaping products she was too young to buy. S sent a nude video of herself "twerking" to Dahl over Snapchat. Dahl also sent naked pictures of himself to S and would video call with S when she and her friends were in the shower. S's mother found out about the relationship and reported Dahl to the police. Dahl admitted to police that he received the video, but claimed he thought S was 17. *See* Mo. Rev. Stat. § 566.034 (2017) (age of consent in Missouri is 17 years old). Dahl testified at trial that he and S were engaged and planning a wedding, but S testified that their relationship was not romantic, although she had told Dahl she was 17 and they had discussed wedding dates.

Dahl and M's mother[1] began a sexual relationship. Dahl disclosed that he was sexually interested in children, and he and M's mother began exchanging messages sexualizing seven-year-old M. They discussed Dahl taking M's virginity before she turned 18. M's mother offered to send Dahl photos of M "in her panties with her legs spread open," and Dahl agreed with M's mother's suggestion that it "would have been hot to pull her panties to the side." While M was sleeping, her mother took a series of pictures showing M's underwear pulled to the side to expose her genitals. M's mother admitted she produced the pictures and sent them to Dahl. Dahl testified at trial that he had received the pictures of M but that he put them in a folder marked "evidence" because he intended to turn them over to police, though he never did.

It is a federal crime to "knowingly receive[] or distribute[] . . . child pornography" or "any material that contains child pornography using any means or facility of interstate or foreign commerce . . . including by computer."

---

[1]Like the district court, we do not use M's mother's name to protect M's privacy.

§ 2252A(a)(2). "Child pornography" includes "any visual depiction . . . of a minor engaging in sexually explicit conduct." § 2256(8)(A). "Sexually explicit conduct" includes the "lascivious exhibition of the anus, genitals, or pubic area of any person." § 2256(2)(A)(v).

Lascivious exhibition is not defined by the statute, but we consider the *Dost* factors to decide whether a video or image includes a lascivious exhibition of the anus, genitals, or pubic area:

> (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive—that is, in a place or pose generally associated with sexual activity; (3) whether the minor is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the minor is fully or partially clothed, or nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the picture is intended or designed to elicit a sexual response in the viewer; (7) whether the picture portrays the minor as a sexual object; and (8) the captions on the pictures.

*United States v. McCoy*, 108 F.4th 639, 643 (8th Cir.) (en banc), *cert. denied*, 145 S. Ct. 551 (2024); *see United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).[2]

Dahl argues that there was insufficient evidence to convict him of receipt of child pornography because neither the video of S nor the image of M showed a lascivious exhibition of a minor's anus, genitals, or pubic area. "We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved

---

[2]Dahl argued in his opening brief that we should abandon the *Dost* factors. Then our en banc court decided *McCoy*. 108 F.4th at 643. Dahl conceded in his reply brief that *McCoy* forecloses his argument. We agree. The district court did not err by applying the *Dost* factors "in accordance with settled circuit precedent." *Id.* at 644.

beyond a reasonable doubt." *United States v. Iqbal*, 869 F.3d 627, 629–30 (8th Cir. 2017).

Applying the *Dost* factors, a reasonable factfinder could conclude that the video of S included a lascivious exhibition of her genitals, anus, or pubic area. S begins the video facing the camera entirely naked. She briefly flashes her pubic area, then turns around, angles her buttocks toward the camera, bends at the waist, and begins "twerking." Although shadowed, her pubic area and anus are visible as her buttocks move, and the camera was positioned specifically to capture her buttocks and pubic area.[3] A reasonable factfinder could infer that the video was intended to elicit a sexual response in the viewer, suggests sexual coyness and a willingness to engage in sexual activity, and portrays the minor as a sexual object.

As to M, a reasonable factfinder could conclude that the image showed a lascivious exhibition of her genitals. In the image at issue, M's mother's fingers are shown pulling apart M's labia so her vagina is exposed. The focal point is M's genitals, which are being manipulated into an unnatural pose with her clothing pulled to the side for full exposure. Dahl suggests that "nothing separates M's exhibition from, *e.g.*, an exhibition in a clinical photograph taken for a doctor by a concerned parent." But the context in which Dahl received the image undermines this argument. *See McCoy*, 108 F.4th at 647 ("[C]ontext is relevant in determining whether an exhibition of the pubic area was lascivious."). Given the conversations about Dahl abusing M before she was 18, a reasonable factfinder could find that the image is nothing like a clinical photograph and instead was taken to appeal to Dahl's sexual desires. And a reasonable factfinder could conclude that M's mother pulled M's underwear to the side and manipulated M's labia in a manner that portrayed M as a sexual object and was intended elicit a sexual response from Dahl.

---

[3]Dahl conceded in his opening brief that the video of S "briefly and obscurely" displayed her genitals. But he argued for the first time at oral argument that S did not show her "anus, genitals, or pubic area," § 2256(2)(A)(v), in the video. We disagree—the video shows shadowed flashes of S's pubic area and anus.

Because a reasonable factfinder could find that the video and the image included lascivious exhibitions of the anus, genitals, or pubic area of a minor, there was sufficient evidence to convict Dahl on both counts of receipt of child pornography. *See McCoy*, 108 F.4th at 646 ("Whether the materials depict a lascivious exhibition is a question of fact for the jury.").

## II. Sentencing

Dahl next argues that the district court erred by running his federal sentence consecutive to his state sentences. The judgment below says that Dahl's federal sentence runs consecutively to all six pending state sentences, but the following discussion took place at sentencing:

District Court: The sentences on Counts 2 and 3 will run concurrently with each other, but consecutively to the sentence in Count 1 for an aggregate term of 600 months. The sentence will also run consecutively to any sentence imposed in Audrain County, Missouri, under docket numbers 21AU-CR988, 22AU-CR61, 22AU-CR62, 21AU-CR120, 21AU-CR269 in the Circuit Court of Randolph County under docket number 22RA-CR347. I don't think those are any of the counts that involve relevant conduct in this case; is that correct, Ms. Lang?

The Government: That's correct, your Honor.

Dahl had six pending Missouri criminal cases at the time. Everyone now agrees that three involved different victims and conduct unrelated to the federal case but three included S, M, or the victim of Dahl's production count. The record is unclear whether the district court intended his federal sentence to run consecutively to the state sentences for offenses involving relevant conduct, although it had discretion to do so. *See Setser v. United States*, 566 U.S. 231, 236–37 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other

sentences that they impose, or that have been imposed in other proceedings, including state proceedings."); *see also* U.S.S.G. § 5G1.3 n.3 (A federal sentence "shall be imposed to run concurrently to the anticipated term of imprisonment" in a pending state case when the state offense "is relevant conduct to" the federal offense.). The Government also requests remand, so we vacate Dahl's sentence and remand to allow the district court to clarify the sentence. *See United States v. Miller*, 23 F.4th 817, 819–20 (8th Cir. 2022) ("Because there was and continues to be confusion about [the sentence], this court reverses and remands for clarification.").

## III.

The convictions are affirmed, but Dahl's sentence is vacated. The case is remanded to allow the district court to clarify whether it intended to run Dahl's sentence consecutive to all six state cases.

_____